UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
----------------------------------------------------------------x
MATTHEW MEISEL,

                                        Plaintiff,                    **OPINION & ORDER**

        - against -                                                    No. 18-CV-7202 (CS)

WESTCHESTER COUNTY; CORRECT CARE
SOLUTIONS; DR. RAUL ULLOA; and DR. JOON
PARK,

                                        Defendants.
----------------------------------------------------------------x

<u>Appearances</u>:

Matthew Meisel
Comstock, New York
*Pro se Plaintiff*

Paul A. Sanders
Barclay Damon LLP
Rochester, New York
*Counsel for Defendants*

<u>Seibel, J.</u>

        Before the Court is the motion to dismiss of Defendants Westchester County (the

"County"), Correct Care Solutions, LLC ("CCS"), Dr. Raul Ulloa, and Dr. Joon Park

(collectively, "Defendants").  (Doc. 36.)[1]  For the following reasons, Defendants' motion is

GRANTED.

---

[1] The Court adopts Defendants' spelling of CCS.  (*See* Doc. 37 ("Sanders Decl.") ¶ 1.)

## I.   __BACKGROUND__

I accept as true the facts, but not the conclusions, set forth in Plaintiff's First Amended Complaint, (Doc. 5 ("FAC")), Second Amended Complaint, (Doc. 35 ("SAC")), and opposition to Defendants' motion for summary judgment, (Doc. 40 ("P's Opp.")).[2]

### A.   __Facts__

Plaintiff, who has been incarcerated "off and on" at Westchester County Jail ("WCJ") since 2014, has restless leg syndrome ("RLS").  (FAC at 5; *see* SAC at 1.)[3]  Plaintiff's RLS kept him up at night and made him delirious.  (P's Opp. at 2.)  When he told medical staff about the medication he had taken on the outside, he was told that that medication was not used for RLS.  (SAC at 3.)  Plaintiff gave CCS and County personnel the names of his doctors, including "Doctors United" in Ardsley, New York, and "St. John's Hospital Treatment Center" in Yonkers, New York, (SAC at 1-2), but was "told by C.S.S. and Westchester County personnel" that they were unable to reach his doctors or pharmacies, (FAC at 6).  Plaintiff's mother called CCS about Plaintiff's medications, and a CCS employee told her to "go to hell" and hung up.

---

[2] Because complaints made by *pro se* plaintiffs are to be examined with "special solicitude," *Shibeshi v. City of N.Y.*, 475 F. App'x 807, 808 (2d Cir. 2012) (summary order) (internal quotation marks omitted), construed liberally to raise the strongest arguments they suggest, *Triestman v. Fed. Bureau of Prisons*, 470 F.3d 471, 474 (2d Cir. 2006) (*per curiam*), and "held to less stringent standards than formal pleadings drafted by lawyers," *Hughes v. Rowe*, 449 U.S. 5, 9 (1980) (*per curiam*) (internal quotation marks omitted), the Court may "consider factual allegations in *pro se* plaintiffs' preceding complaints in order to supplement those in amended complaints," *Voltaire v. Westchester Cty. Dep't of Soc. Servs.*, No. 11-CV-8876, 2016 WL 4540837, at *3 (S.D.N.Y. Aug. 29, 2016).  Additionally, "allegations made in a *pro se* plaintiff's memorandum of law, where they are consistent with those in the complaint, may also be considered on a motion to dismiss."  *Braxton v. Nichols*, No. 08-CV-8568, 2010 WL 1010001, at *1 (S.D.N.Y. Mar. 18, 2010).  The Court will send Plaintiff copies of all unreported cases cited in this Opinion and Order.

[3] Citations to the First and Second Amended Complaints and Plaintiff's Opposition use the page numbers generated by the Court's Electronic Filing System.

(FAC at 7.)  Plaintiff filed ten to fifteen grievances and wrote letters to and about Dr. Raul Ulloa, the "doctor in charge," but was not treated by him.  (SAC at 2-4.)

Plaintiff was treated by Dr. Joon Park and given a prescription of 100 milligrams of tramadol twice a day.  (*Id.* at 2.)  The medication helped, but only for "a couple of hours," so Plaintiff asked for an increased dosage, which Ulloa denied.  (*Id.*)  Plaintiff had previously been prescribed 100 milligrams of tramadol four times a day.  (*Id.*)  Ulloa also took Plaintiff off of tramadol without seeing him.  (P's Opp. at 2.)  Plaintiff was seen by a CCS chronic pain doctor who suggested that Plaintiff take two tablets of Tylenol 3 daily, which Ulloa also denied.  (SAC at 2.)  Plaintiff offered to pay for his own doctor and medication, but that offer was denied.  (*Id.* at 3.)  He also asked to see a specialist, which request Ulloa refused and delayed.  (*Id.* at 2.)

In June 2017, Plaintiff contracted "a serious staph infection called [MRSA]," (FAC at 6), and was treated at Westchester Medical Center "because of neglect," (SAC at 3).  Plaintiff was put on pain medication and antibiotics, and once Plaintiff returned to WCJ, Ulloa changed those medications without seeing Plaintiff.  (SAC at 3.)

      **B.**    **Procedural History**

Plaintiff's Complaint, filed August 8, 2018, named the County, Westchester Medical Center, CCS, Ulloa, Park, and John and Jane Does 1-50 as defendants in their official and individual capacities, and brought claims under 42 U.S.C. § 1983 for violations of his First, Fifth, Eighth, Ninth, and Fourteenth Amendment rights; failure to hire, train, and supervise; negligence; and medical malpractice.  (Doc. 2 at 1-2, 8.)  Plaintiff filed the First Amended Complaint the next day, bringing the same claims.  (FAC.)  In May 2019, Defendants and Westchester Medical Center filed letters requesting a pre-motion conference regarding their anticipated motions to dismiss for failure to state a claim.  (Docs. 20, 24.)  At the pre-motion

conference on June 14, the Court dismissed Westchester Medical Center from the case on

Plaintiff's application and granted Plaintiff leaved to amend, (Minute Entry dated June 14, 2019),

which he did on July 17, alleging additional facts related to his medical treatment and

grievances, (SAC).  I also set a schedule for the remaining Defendants to move to dismiss or

answer.  (Minute Entry dated June 14, 2019.)

      On September 4, Defendants moved to dismiss the Second Amended Complaint, (Doc.

36), and filed their memorandum of law in support, (Doc. 38 ("Ds' Mem.")).  On October 3,

Plaintiff filed a memorandum in opposition, (P's Opp.), and Defendants replied on October 23.

(Doc. 41 ("Ds' Reply")).

## II.   **LEGAL STANDARD**

###     A.   **Motion to Dismiss**

      "To survive a motion to dismiss, a complaint must contain sufficient factual matter,

accepted as true, to 'state a claim to relief that is plausible on its face.'"  *Ashcroft v. Iqbal*, 556

U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).  "A claim

has facial plausibility when the plaintiff pleads factual content that allows the court to draw the

reasonable inference that the defendant is liable for the misconduct alleged."  *Id.*  "While a

complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual

allegations, a plaintiff's obligation to provide the grounds of his entitlement to relief requires

more than labels and conclusions, and a formulaic recitation of the elements of a cause of action

will not do."  *Twombly*, 550 U.S. at 555 (alteration, citations, and internal quotation marks

omitted).  While Federal Rule of Civil Procedure 8 "marks a notable and generous departure

from the hypertechnical, code-pleading regime of a prior era, . . . it does not unlock the doors of

discovery for a plaintiff armed with nothing more than conclusions."  *Iqbal*, 556 U.S. at 678-79.

In considering whether a complaint states a claim upon which relief can be granted, the court "begin[s] by identifying pleadings that, because they are no more than conclusions, are not entitled to the assumption of truth," and then determines whether the remaining well-pleaded factual allegations, accepted as true, "plausibly give rise to an entitlement to relief." *Id.* at 679. Deciding whether a complaint states a plausible claim for relief is "a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id.* "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged – but it has not 'shown' – 'that the pleader is entitled to relief.'" *Id.* (alteration omitted) (quoting Fed. R. Civ. P. 8(a)(2)).

As mentioned in note 2 above, complaints by *pro se* plaintiffs are examined with "special solicitude," *Shibeshi*, 475 F. App'x at 808 (internal quotation marks omitted), but "threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice," and district courts "cannot invent factual allegations that [the plaintiff] has not pled," *Chavis v. Chappius*, 618 F.3d 162, 170 (2d Cir. 2010).

B.    **Documents Properly Considered**

When deciding a motion to dismiss, a court is entitled to consider:

(1) facts alleged in the complaint and documents attached to it or incorporated in it by reference, (2) documents integral to the complaint and relied upon in it, even if not attached or incorporated by reference, (3) documents or information contained in defendant's motion papers if plaintiff has knowledge or possession of the material and relied on it in framing the complaint . . . , and (5) facts of which judicial notice may properly be taken under Rule 201 of the Federal Rules of Evidence.

*Weiss v. Incorporated Village of Sag Harbor*, 762 F. Supp. 2d 560, 567 (E.D.N.Y. 2011) (internal quotation marks omitted).  "To be incorporated by reference, the complaint must make a clear, definite and substantial reference to the documents."  *DeLuca v. AccessIT Grp., Inc.*, 695 F. Supp. 2d 54, 60 (S.D.N.Y. 2010) (internal quotation marks omitted).

In the First Amended Complaint, Plaintiff alleges that "[t]he U.S.D.O.J. did a two

(2) year investigation of the Westchester County Jail.  This agency published this as the 'CRIPA'

report on November 14, 2009 [(the "DOJ Report" or "Report")]."  (FAC at 6.)  Plaintiff states

that he "incorporate[s] that report . . . into this Complaint by reference," (*id.*), and he alleges that

none of the inadequacies identified in that report – including that the jail "was extremely

denounced in the report as to [MRSA]" – have been addressed, (*id.* at 7).  Although he does not

attach the DOJ Report to any of his filings, granting Plaintiff special solicitude, I find that his

references to the Report – which is publicly available – are clear, definite, and substantial enough

to incorporate the Report by reference.[4]  Plaintiff also states that he incorporates his medical

records, (*id.* at 6), but the Court need not discuss whether it can consider them – or how, given

that they are neither provided nor publicly available – because Plaintiff does not refer to anything

contained therein that would affect the outcome of this motion.  *See Yousef v. County of

Westchester*, No. 19-CV-1737, 2020 WL 2037177, at *5 (S.D.N.Y. Apr. 28, 2020).

## III.   DISCUSSION

### A.   Federal Claims

Plaintiff does not break out his causes of action in his papers.  The Court presumes that

he means to allege (1) claims against Defendants Ulloa and Park (the "Individual Defendants")

for deliberate indifference to medical needs, (2) a due process claim regarding WCJ's grievance

procedure, and (3) *Monell* claims against the County and CCS.  Although Plaintiff indicated on

---

[4] Even if the DOJ Report were not incorporated by reference, I could take judicial notice of it.  *See HB v. Monroe Woodbury Cent. Sch. Dist.*, No. 11-CV-5881, 2012 WL 4477552, at *4 (S.D.N.Y. Sept. 27, 2012) ("[I]t is well established that courts may take judicial notice of publicly available documents on a motion to dismiss.") (collecting cases).  The DOJ Report is available online at https://www.justice.gov/sites/default/files/crt/legacy/2010/12/15/ Westchester_findlet_11-19-09.pdf.

the Court's prisoner complaint form that he was bringing First, Fifth, and Ninth Amendment

claims, (*see* FAC at 2), the factual allegations make clear that he is not alleging a First

Amendment claim; the due process claims are against state, not federal, actors and thus the

Fourteenth, not Fifth, Amendment applies, *Bussey v. Phillips*, 419 F. Supp. 2d 569, 586

(S.D.N.Y. 2006); and the Ninth Amendment cannot serve as the basis for a § 1983 claim, *see*

*Lloyd v. Lee*, 570 F. Supp. 2d 556, 566 (S.D.N.Y. 2008) (collecting cases).

### 1.      Deliberate Indifference Claim

"A pretrial detainee may establish a § 1983 claim for allegedly unconstitutional

conditions of confinement by showing that the [defendant] acted with deliberate indifference to

the challenged conditions."  *Darnell v. Pineiro*, 849 F.3d 17, 29 (2d Cir. 2017).  Because

Plaintiff indicated that he was a pretrial detainee at the relevant time, (*see* FAC at 2), his claim is

governed by the "more plaintiff-friendly Fourteenth Amendment" standard, as opposed to the

"more rigorous Eighth Amendment convicted-prisoner standard."  *Pizarro v. Bd. of Corr.*, No.

16-CV-2418, 2018 WL 3462512, at *4 n.4 (S.D.N.Y. July 17, 2018); *see Darnell*, 849 F.3d at

29.

To establish a Fourteenth Amendment violation, "a pretrial detainee must satisfy two

prongs . . . , an 'objective prong' showing that the challenged conditions were sufficiently

serious to constitute objective deprivations of the right to due process, and a 'subjective

prong' . . . showing that the [defendant] acted with at least deliberate indifference to the

challenged conditions."  *Darnell*, 849 F.3d at 29.

### a.      Objective Prong

"[T]o establish an objective deprivation, the inmate must show that the conditions, either

alone or in combination, pose an unreasonable risk of serious damage to his health . . . ."  *Id.* at

30 (internal quotation marks and citation omitted).  Two inquiries guide whether an alleged

deprivation of medical care is objectively serious.  "The first inquiry is whether the prisoner was

actually deprived of adequate medical care."  *Salahuddin v. Goord*, 467 F.3d 263, 279 (2d Cir.

2006).  "Because prison officials' duty is only to provide reasonable care, prison officials are

liable only if they fail to take reasonable measures in response to a medical condition."

*Rutherford v. Correct Care Sols., LLC*, No. 18-CV-12049, 2020 WL 550701, at *5 (S.D.N.Y.

Feb. 4, 2020) (internal quotation marks omitted).  "Second, the objective test asks whether the

inadequacy in medical care is sufficiently serious."  *Salahuddin*, 467 F.3d at 280.  "[I]f the

unreasonable medical care is a failure to provide any treatment for an inmate's medical

condition, courts examine whether the inmate's medical condition is sufficiently serious."  *Id.*

"Relevant factors in determining the seriousness of the medical condition include whether a

reasonable doctor or patient would find it important and worthy of comment, whether the

condition significantly affects an individual's daily activities, and whether it causes chronic and

substantial pain."  *Rutherford*, 2020 WL 550701, at *5 (internal quotation marks and alteration

omitted).  If the alleged conduct concerns the medical treatment itself, "the seriousness inquiry is

narrower."  *Salahuddin*, 467 F.3d at 280.  "[I]f the prisoner is receiving on-going treatment and

the offending conduct is an unreasonable delay or interruption in that treatment, the seriousness

inquiry 'focus[es] on the challenged delay or interruption in treatment rather than the prisoner's

underlying medical condition alone.'"  *Id.* (second alteration in original) (quoting *Smith v.

Carpenter*, 316 F.3d 178, 185 (2d Cir. 2003)).  "In cases where a prisoner alleges a delay in

medical treatment, courts examine both the seriousness of the prisoner's medical conditions and

the harm caused by any unreasonable delay."  *Lombardo v. Graham*, No. 19-CV-1535, 2020 WL

1909581, at *2 (2d Cir. Apr. 20, 2020) (summary order) (plaintiff sufficiently pleaded objective

8

prong where he alleged severe medical condition, pain experienced during delay, and that another doctor stated that he should have been treated sooner). "Courts have declined to dismiss deliberate-indifference claims as a matter of law where plaintiffs have alleged a delay in medical treatment causing substantial pain, even when the injuries alleged were not life-threatening and the delay was relatively brief." *Silva v. Kilham*, 19-CV-1719, 2020 WL 2404922, at *4 (D. Conn. May 12, 2020) (internal quotation marks omitted).

Plaintiff alleges that, upon his admission to WCJ, he suffered from RLS; he advised medical staff of his condition; Park saw him and gave him a prescription; a chronic pain doctor saw him and recommended additional pain medication; and Ulloa did not see him, delayed his treatment, refused to increase his prescribed dosage or add the pain medication, took away his tramadol prescription, and denied his requests to see a specialist and pay for his own doctor and medication.

Plaintiff plausibly alleged that he was deprived of adequate medical care because at least Ulloa failed to take reasonable measures in response to his RLS. Although Park treated him and gave him a prescription that afforded him some relief, that relief only lasted a few hours and he was otherwise in extreme pain and suffering sleeplessness and delusions.[5] Ulloa refused to increase Plaintiff's dosage to that which he was prescribed on the outside, ultimately took Plaintiff off of that medication without seeing him, and ignored the chronic pain doctor's suggestion that Plaintiff be prescribed Tylenol 3. Plaintiff plausibly alleged that these actions

---

[5] Plaintiff does not make clear whether Park provided him with ongoing treatment or was aware that the initial prescription of tramadol twice daily was not sufficient.

and inactions were not reasonable measures because of the extreme pain and delusions he

continued to suffer.[6]

Next, Plaintiff plausibly alleged that his RLS is a sufficiently serious medical condition.

Defendants argue that RLS is not a serious medical need because it is not "'an objectively

serious or urgent condition that may produce death, degeneration, or extreme pain.'"  (Ds' Mem.

at 5 (quoting *Walker v. County of Nassau*, No. 15-CV-4794, 2016 WL 11481725, at *11

(E.D.N.Y. Aug. 8, 2016), *report and recommendation adopted*, 2016 WL 5338546 (E.D.N.Y.

Sept. 22, 2016).)  While some courts have granted motions to dismiss on the ground that a

plaintiff suffering RLS has not plausibly alleged a serious medical condition, *see Bryant v.*

*Downs*, No. 09-CV-1670, 2010 WL 2593564, at *2 (M.D. Fla. June 28, 2010); *Sufka v. Barney*,

No. 08-CV-1504, 2008 WL 2787715, at *3 & n.2 (D. Minn. July 15, 2008), here, Plaintiff

alleges that his condition causes him ever-increasing, "very extreme pain" that amounts to

"torture," (FAC at 5).  Additionally, he had been treated at multiple medical facilities, which

supports the inference that a reasonable doctor would find the condition important and worthy of

comment, and his sleeplessness and delusions show that the condition significantly affects his

daily activities.  *See Rutherford*, 2020 WL 550701, at *5.  Therefore, without deciding whether

RLS is a serious medical condition *per se*, Plaintiff here has plausibly alleged at this stage that he

suffers from one.

---

[6] Although Ulloa did not physically examine Plaintiff before refusing his requests to see a specialist or pay for his own doctor and medication, that fact hardly suggests that Plaintiff was deprived of adequate treatment.  Plaintiff's allegation that his request to see a specialist was denied is undercut by the allegation that he saw a chronic pain doctor.  (*See* SAC at 2.)  And it should be self-evident why prisoners cannot see private doctors and receive outside prescriptions while incarcerated.  Nor is it unreasonable in itself that a supervising doctor reviews and perhaps overrules a subordinate's decisions or a prisoner's request without himself repeating the physical examination – a practice common even in the best private hospitals.

Further, Plaintiff's allegations seem to be rooted in a lack of treatment adequate for his pain, but to the extent he alleges that delayed treatment posed an unreasonable risk of serious damage to his health, he plausibly alleged that the delay caused him harm.  Plaintiff experienced extreme pain during the delay, and another doctor suggested he take Tylenol 3, which Ulloa denied.  *See Lombardo*, 2020 WL 1909581, at *2.  Accordingly, Plaintiff's allegations satisfy the objective component of a claim for deliberate indifference to serious medical needs.

b.   <u>Subjective Prong</u>

"[T]he term 'subjective prong' might be a misleading description" because "'deliberate indifference' roughly means 'recklessness,' but 'recklessness' can be defined subjectively (what a person actually knew, and disregarded), or objectively (what a reasonable person knew, or should have known)."  *Darnell*, 849 F.3d at 29.

> Therefore, to establish a claim for deliberate indifference to conditions of confinement under the Due Process Clause of the Fourteenth Amendment, the pretrial detainee must prove that the defendant-official acted intentionally to impose the alleged condition, or recklessly failed to act with reasonable care to mitigate the risk that the condition posed to the pretrial detainee even though the defendant-official knew, or should have known, that the condition posed an excessive risk to health or safety.

*Id.* at 35.  "To the extent that plaintiff contends the pain medication provided was not strong enough, or the right medication to alleviate his pain, disagreements over medications, diagnostic techniques, forms of treatment, the need for specialists, and the timing of their intervention implicate medical judgments and not plaintiff's constitutional rights."  *Williams v. Sykes*, No. 17-CV-990, 2019 WL 2374116, at *10 (N.D.N.Y. May 10, 2019), *report and recommendation adopted*, 2019 WL 2369882 (N.D.N.Y. June 5, 2019).  "Even if those medical judgments amount to negligence or malpractice, malpractice does not become a constitutional violation simply because the plaintiff is an inmate."  *Id.* at *4.

Plaintiff has not set forth facts plausibly showing that either Individual Defendant's treatment of him was accompanied by the requisite state of mind. Plaintiff's filings allege that Park treated him, which relieved some pain, and that Ulloa declined Plaintiff's requests for more and additional medication. Accordingly, Plaintiff has not plausibly alleged that either Individual Defendant failed to offer Plaintiff any medical care; rather, the allegation is that Plaintiff did not receive the type of treatment he wanted, which does not give rise to a deliberate indifference claim. *See Hamilton v. Westchester County*, No. 18-CV-8361, 2020 WL 917214, at *14 (S.D.N.Y. Feb. 25, 2020) (collecting cases); *Johnson v. Schiff*, No. 17-CV-8000, 2019 WL 4688542, at *12 (S.D.N.Y. Sept. 26, 2019). "[I]t is well-settled that the ultimate decision of whether or not to administer a . . . medication is a medical judgment that, without more, does not amount to deliberate indifference." *Jacks v. Annucci*, No. 18-CV-3291, 2019 WL 3239256, at *4 (S.D.N.Y. July 18, 2019) (internal quotation marks omitted); *see Crouch v. Spaulding*, No. 16-CV-1435, 2019 WL 1004539, at *4 (N.D.N.Y. Jan. 24, 2019) ("Plaintiff's claim . . . is not that he was entirely denied care . . . , but that he did not receive the specific treatment he requested. Such a claim is not cognizable under the Fourteenth Amendment deliberate indifference standard . . . ."), *report and recommendation adopted*, 2019 WL 1004357 (N.D.N.Y. Mar. 1, 2019). Plaintiff's own allegations suggest that Defendants attempted to treat his condition and he simply disputes their choices.

As to Plaintiff's assertion that he contracted MRSA while at WCJ, the only allegation related to an Individual Defendant is that Ulloa changed Plaintiff's antibiotic and pain medication without seeing him after his return from the hospital. (SAC at 3.) This medical judgment does not amount to deliberate indifference. "Plaintiff's disagreement with the manner in which his condition was treated and his belief that he should have received more or different

12

treatment is not, without more, sufficient to state a constitutional claim." *Lopez v. Phipps*, No.

18-CV-3605, 2019 WL 2504097, at *10 (E.D.N.Y. June 17, 2019).

Thus, Plaintiff's deliberate indifference claims against the Individual Defendants must be

dismissed.[7]

### 2.    Procedural Due Process Claim

"To present a due process claim, a plaintiff must establish (1) that he possessed a liberty

interest and (2) that the defendant(s) deprived him of that interest as a result of insufficient

process." *Ortiz v. McBride*, 380 F.3d 649, 654 (2d Cir. 2004) (internal quotation marks and

alteration omitted).  Plaintiff makes general, boilerplate allegations about the adequacy of the

WCJ grievance procedure.  (*See* FAC at 7 ("The grievance program is wholly inadequate . . . .");

SAC at 3 ("The Plaintiff has over 10-15 [grievances] that were never sent past Westchester

County Jail . . . .").)  He does not allege facts supporting the inference that the procedure is

inadequate (as opposed to it having generated results with which he disagrees), that somebody

other than Plaintiff had the responsibility to elevate his grievances beyond the institution, or that

he had some right to review by anyone outside WCJ.  And, in any event, "[a] prisoner has no

constitutional right to a prison grievance procedure or to have his grievances investigated."

*Hayes v. County of Sullivan*, 853 F. Supp. 2d 400, 434 (S.D.N.Y. 2012).  Therefore, "[i]nmate

grievance programs created by state law are not required by the Constitution, and consequently,

---

[7] To the extent Plaintiff meant to allege a § 1983 conspiracy claim, that claim is also dismissed.  His vague, boilerplate assertions are conclusory and unsupported by facts, (*see* FAC at 6 ("they . . . act in concert"); *id.* at 8 ("C.C.S. medical personnel . . . have conspired to hurt and to damage my health, make my life unsafe.")), and thus his conspiracy claim is properly dismissed, *see Ciambriello v. County of Nassau*, 292 F.3d 307, 325 (2d Cir. 2002) (internal quotation marks omitted); *Vega v. Artus*, 610 F. Supp. 2d 185, 202-03 (N.D.N.Y. 2009).  Further, "if a plaintiff cannot sufficiently allege a violation of his rights, it follows that he cannot sustain a claim of conspiracy to violate those rights."  *Vega*, 610 F. Supp. 2d at 203 (internal quotation marks omitted).

allegations that prison officials violated those procedures do not give rise to a cognizable § 1983 claim." *Means v. Rockland Cty. Corr. Facility*, No. 18-CV-8290, 2019 WL 1596489, at *9 (S.D.N.Y. Apr. 15, 2019) (internal quotation marks and alterations omitted); *see also Johnson*, 2019 WL 4688542, at *20.  Plaintiff's procedural due process claim is accordingly dismissed.

### 3.      Municipal Liability

"Congress did not intend municipalities to be held liable [under § 1983] unless action pursuant to official municipal policy of some nature caused a constitutional tort." *Monell v. Dep't of Soc. Servs. of N.Y.*, 436 U.S. 658, 691 (1978).  "Absent an underlying constitutional violation, a *Monell* claim cannot lie." *Thomas v. Westchester County*, No. 12-CV-6718, 2013 WL 3357171, at *6 (S.D.N.Y. July 3, 2013); *see Bolden v. County of Sullivan*, 523 F. App'x 832, 834 (2d Cir. 2013) (summary order) ("[B]ecause the district court properly found no underlying constitutional violation, its decision not to address the County defendants' liability under *Monell* was correct."); *Segal v. City of N.Y.*, 459 F.3d 207, 219 (2d Cir. 2006) ("*Monell* does not provide a separate cause of action . . . it *extends* liability to a municipal organization where that organization's failure to train, or the policies or customs that it has sanctioned, led to an independent constitutional violation.") (emphasis in original).  Here no underlying claims survive, so there is no liability for which the County could be responsible.

Even if the underlying claims had survived, Plaintiff has not plausibly alleged a *Monell* claim against CCS or the County.[8]  Plaintiff simply does not allege any facts from which this Court could infer the existence of a formal policy or custom.  *See Mercedes v. Westchester County*, No. 18-CV-4087, 2019 WL 1429566, at *5 (S.D.N.Y. Mar. 29, 2019) (collecting cases).

---

[8] I assume without deciding for the purposes of this motion that *Monell* would apply to private entities such as CSS that provide care to state inmates.  *See Thomas*, 2013 WL 3357171, at *6 n.13.

The closest he comes is his allegation that he "was seen by people that were not qualified to diagnos[e him]" and lacked adequate training and supervision.  (SAC at 3; *see* FAC at 6-7.)  But he provides no facts to support that conclusory statement, and his bare allegations in that regard do not suffice.  *See Vassallo v. City of N.Y.*, No. 15-CV-7125, 2016 WL 6902478, at *14 (S.D.N.Y. Nov. 22, 2016) ("Conclusory allegations that a municipality failed to train and supervise its employees are insufficient to state a *Monell* claim.") (internal quotation marks and alterations omitted).

Nor do Plaintiff's allegations about MRSA and the DOJ Report suggest that his injuries were caused by a municipal policy or custom.  He alleges that he contracted MRSA while at WCJ, and the DOJ Report details in part "Medical Care Deficiencies" at WCJ, including in the control of MRSA and other infections.  *See* DOJ Report at 19-22.  But Plaintiff does not allege any facts regarding how he contracted MRSA or permitting the inference that particular conditions at WCJ caused the infection.  *See Bd. of Cty. Comm'rs of Bryan Cty. v. Brown*, 520 U.S. 397, 404 (1997) (plaintiff must demonstrate a "direct causal link between the municipal action and the deprivation of federal rights").  Further, the DOJ Report does not involve medical care provided by CCS.  And although Plaintiff's allegations are not rooted in a cogent timeline, his allegations occurred, at the earliest, in 2015, six years after the Report was issued.  *See Moses v. Westchester Cty. Dep't of Corr.*, No. 10-CV-9468, 2017 WL 4386362, at *12 (S.D.N.Y. Sept. 29, 2017) (where "a gap in time [of six or seven years] exists between findings in an official report and Plaintiff's allegations, the events are too disconnected in time and personnel to plausibly allege a policy, practice, or custom"), *aff'd*, 739 F. App'x 66 (2d Cir. 2018) (summary order); *see also Yousef*, 2020 WL 2037177, at *12 (eight years).  Nor do his allegations about the grievance procedure suggest a causal connection to any constitutional violation.  He therefore

15

has not "nudged [his] claim[] across the line from conceivable to plausible," *Twombly*, 550 U.S. at 570, and his *Monell* claim against the County must be dismissed.

**B.**   **State Law Claims**

In addition to his § 1983 claims, I construe Plaintiff's First and Second Amended Complaints to assert medical malpractice, negligence, and negligent hiring, supervision, and retention, in violation of New York law.  Defendants argue that these claims are inadequately pleaded.  (Ds' Mem. at 16).  The "traditional 'values of judicial economy, convenience, fairness, and comity'" weigh in favor of declining to exercise supplemental jurisdiction where all federal law claims are eliminated before trial.  *Kolari v. N.Y.-Presbyterian Hosp.*, 455 F.3d 118, 122 (2d Cir. 2006) (quoting *Carnegie-Mellon Univ. v. Cohill*, 484 U.S. 343, 350 (1988)).  Having determined that all of the claims over which this Court has original jurisdiction should be dismissed, and having considered the factors set forth in *Cohill*, I decline to exercise supplemental jurisdiction over Plaintiffs' remaining state law causes of action.  *See id.* (citing 28 U.S.C. § 1367(c)(3)).  Accordingly, Plaintiff's state law claims are dismissed.

**IV.**   **LEAVE TO AMEND**

Leave to amend a complaint should be freely given "when justice so requires." Fed. R. Civ. P. 15(a)(2).  "[I]t is within the sound discretion of the district court to grant or deny leave to amend."  *Kim v. Kimm*, 884 F.3d 98, 105 (2d Cir. 2018) (internal quotation marks omitted).

> Leave to amend, though liberally granted, may properly be denied for:  "undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, futility of amendment, etc."

*Ruotolo v. City of N.Y.*, 514 F.3d 184, 191 (2d Cir. 2008) (quoting *Foman v. Davis*, 371 U.S. 178, 182 (1962)).

Plaintiff has already amended once, after having the opportunity to review a pre-motion letter from Defendants stating the grounds on which they would move to dismiss, (Doc. 24), as well as having the benefit of the Court's observations during the pre-motion conference, (Minute Entry dated June 14, 2019).[9]  In general, a plaintiff's failure to fix deficiencies in the previous pleading, after being provided notice of them, is alone sufficient ground to deny leave to amend. *See Nat'l Credit Union Admin. Bd. v. U.S. Bank Nat'l Ass'n*, 898 F.3d 243, 257-58 (2d Cir. 2018) ("When a plaintiff was aware of the deficiencies in his complaint when he first amended, he clearly has no right to a second amendment even if the proposed second amended complaint in fact cures the defects of the first.  Simply put, a busy district court need not allow itself to be imposed upon by the presentation of theories *seriatim*.") (internal quotation marks, alteration, and footnote omitted); *In re Eaton Vance Mut. Funds Fee Litig.*, 380 F. Supp. 2d 222, 242 (S.D.N.Y. 2005) (denying leave to amend because "the plaintiffs have had two opportunities to cure the defects in their complaints, including a procedure through which the plaintiffs were provided notice of defects in the Consolidated Amended Complaint by the defendants and given a chance to amend their Consolidated Amended Complaint," and "plaintiffs have not submitted a proposed amended complaint that would cure these pleading defects"), *aff'd sub nom. Bellikoff v. Eaton Vance Corp.*, 481 F.3d 110, 118 (2d Cir. 2007) (*per curiam*) ("[P]laintiffs were not entitled to an advisory opinion from the Court informing them of the deficiencies in the

---

[9] Although Plaintiff filed a Complaint, a First Amended Complaint, and a Second Amended Complaint, he filed the First Amended Complaint one day after the original Complaint, and it is not clear whether or how the two are different.  (*See* Docs. 2, 5.)  The Second Amended Complaint was filed after the June 14 conference and added allegations not present in the first two Complaints.  Accordingly, I consider Plaintiff to have amended only once.

complaint and then an opportunity to cure those deficiencies.") (internal quotation marks omitted).

Further, Plaintiff has not requested leave to amend or otherwise suggested that he is in possession of facts that would cure the deficiencies identified in this Opinion and Order. Accordingly, the Court declines to grant leave to amend *sua sponte*. *See TechnoMarine SA v. Giftports, Inc*., 758 F.3d 493, 505 (2d Cir. 2014) (plaintiff need not be given leave to amend if he fails to specify how amendment would cure the pleading deficiencies in his complaint); *Gallop v. Cheney*, 642 F.3d 364, 369 (2d Cir. 2011) (district court did not err in dismissing claim with prejudice in absence of any indication plaintiff could or would provide additional allegations leading to different result); *see also Loreley Fin. (Jersey) No. 3 Ltd. v. Wells Fargo Sec., LLC*, 797 F.3d 160, 190 (2d Cir. 2015) (denial of leave to amend would be proper where "request gives no clue as to how the complaint's defects would be cured") (internal quotation marks omitted).

## V.   <u>CONCLUSION</u>

For the reasons stated above, Defendants' motion to dismiss is GRANTED.  The Clerk of Court is respectfully directed to terminate the pending motion, (Doc. 36), and close the case.  My chambers will send a copy of this Opinion and Order to Plaintiff.

SO ORDERED.

Dated: June 25, 2020
    White Plains, New York

_____
CATHY SEIBEL, U.S.D.J.